## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| **BILL MONTIGEL,** | § | |
| | § | |
| *Plaintiff,* | § | **JURY DEMAND** |
| | § | |
| **v.** | § | |
| | § | |
| **TEXAS CHRISTIAN UNIVERSITY d/b/a** | § | |
| **TCU,** | § | |
| | § | **CIVIL ACTION NO.** 4:24-cv-611 |
| *Defendant.* | § | |
| | § | |

## COMPLAINT AND JURY DEMAND

TO THE HONORABLE DISTRICT COURT:

Plaintiff Bill Montigel (hereinafter "Montigel" or "Plaintiff"), presents this Complaint against Defendant Texas Christian University d/b/a TCU (hereinafter "TCU" or "Defendant"), files this lawsuit (hereinafter this "Lawsuit"" or "Action"):

## WHAT THIS LAWSUIT IS ABOUT

1. This Lawsuit arises from TCU's pattern and practice of age discrimination and failure to ensure a workplace free from discrimination, sexual harassment, and retaliation. When TCU demanded Montigel retire and he refused and opposed age discrimination, TCU retaliated by creating a hostile environment; even going as far as to give Montigel the silent treatment.

2. Montigel coached TCU's Men's Golf Team for 36 successful years. His achievements were quantifiable, consistent, and unmatched. Despite subpar facilities and being underfunded, the TCU golf team was consistently a top-tier program with a good graduation rate.

3. Montigel's historical achievements include, but are not limited to, 32 years of qualifying

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

for the NCAA Regionals (32 out of 33 opportunities), reaching the NCAA Championships 18 times, finishing in the top 20 at the NCAA Championships 13 times, winning 8 conference titles, coaching 16 players to a total of 26 All-American honors, and being named Coach of the Year seven times in five difference leagues, inducted into the Golf Coach Hall of Fame, and winning the prestigious Eddie Merrins Award.

4. ***TCU's own website*** lauded Montigel's incredible accomplishments stating:

"One of the most decorated Coaches in TCU Athletics."

"Since becoming the face of TCU golf, he has provided the blueprint for building ***one of the Nation's top collegiate programs***."

5. Despite Montigel's consistent and ongoing successes, TCU's Athletic Director told Montigel that TCU would not be renewing his contract and told Montigel to issue a press release stating he was retiring. TCU <u>assumed</u> because Montigel was 68 he would retire or would want to retire. Indeed, TCU's decision to not renew Montigel's contract and its demand that he issue a press release were because of Montigel's age, which is age discrimination. TCU replaced Montigel with a 38 year old coach.

6. Montigel stated he would not retire and had no plans to retire. Montigel opposed this blatant age discrimination telling Donati that his demand that he retire was wrong. Montigel then filed a joint Charge of Discrimination with the Texas Workforce Commission and EEOC.

7. Donati and TCU have a pattern and practice of age discrimination and firing older coaches. When TCU's Assistant Athletic Director Michael Levy (hereinafter "Levy") was discussing a replacement for Montigel, TCU's Assistant Men's Golf Coach Adrien Mork suggested hiring Chuck Winstead, who led LSU to a National Championship in 2015. Levy said verbatim " TCU is not going to hire some old coach who's about to get fired."

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

**When Montigel Complains of Age Discrimination, TCU Retaliates**

8. In response to Montigel's opposition to age discrimination, TCU began retaliating against him.  TCU's Athletic Director and Assistant Athletic Director stopped speaking to Montigel and began intentionally undermining and sabotaging his job.  For example, the Assistant Athletic Director, Michael Levy, began to interfere with scholarship and eligibility opportunities for students on the Men's Golf Team and directed TCU's Sports Information Director to stop publishing Montigel's and the team's successes; TCU intentionally delayed reimbursing Montigel's business expenses; failed to timely pay tournament fees, and Levy refused to let the team use its own discretionary account, which contained funds the team and Montigel fund raised--as had been the practice for decades.

9.  In a final act of retaliation, Montigel's last day at TCU came and went without an offer of <u>any</u> severance. Upon information and belief, TCU regularly offers younger coaches and employees whose contracts are not renewed, or who are fired, severance packages. Upon information and belief, TCU offers departing long-tenured employees and coaches a severance package, especially coaches who have dedicated more than 30 years to the school with a successful record like Montigel.  One poignant example is TCU fired head football coach Gary Patterson (age 64).  Patterson did not complain about age discrimination. TCU paid Patterson a huge severance. The reason TCU did not any offer Montigel <u>any</u> severance is because he filed an age discrimination charge.

10.  In response to TCU's mistreatment of Montigel, at least 15 accomplished TCU Men's Golf alumni wrote to TCU's athletic department expressing their support for Montigel and criticizing TCU for its decision.

---

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

**TCU's AD (Donati) Failes to Create a**
**Workplace Free of Discrimination and Sexual Harassment**

11.   Discrimination and sexual harassment have defined TCU's Athletic Department since Donati became Athletic Director. Donati ushered in an "animal house" atmosphere.  Just one example was a leader in the athletic department--who was married--engaged in sexual relations with the wife of a highly successful TCU coach, leading to that coach leaving TCU.  Meanwhile, athletic department employees were committing sexual harassment and other inappropriate acts in the course of their employment.  Excessive drinking frequently occurred at TCU athletic functions. This included consumption of alcohol to the point of a TCU department employee urinated on himself at the Kansas City Big 12 tournament.

**Despite the Retaliation, Montigel has a Great Last Year**

12.    Despite TCU's retaliation and roadblocks, Montigel nonetheless engineered an outstanding year for the team including a second place finish in the Big 12, and another birth in the NCAA Regionals, and being ranked 27th out of 297 Division I program (placing it in the top 9% of golf programs nationwide); and, Montigel was awarded Co-Big 12 Coach of the year in 2022.

13.   Compare that to the poor performance of the team under the 38 year old replacement coach.  In their first and only year under a new head coach, TCU finished 14th (dead last) in the Big 12 tournament, didn't make the NCAA Regionals, and ended up ranked 96th in the country. The team never dropped below 60th in Montigel's 36 years as TCU's Coach.

14.   The last thing that Montigel wanted to do is file a lawsuit against his beloved TCU. However, this dispute could not be resolved amicably. Montigel believes in the rule of law and doing the right thing. He is pursuing his discrimination claims and this Lawsuit not just for himself,

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

but on behalf of all senior citizens who have been successful in their jobs, but their employer *assumes* that just because they are 60 or older they don't have the stamina, drive, and energy to continue their success.  He hopes that this Lawsuit will encourage TCU to improve its workplace for older and female employees and ensure a workplace free of discrimination, harassment, and retaliation.

## PARTIES

15.  Plaintiff, Bill Montigel, is an individual currently residing in Texas.

16.  Defendant Texas Christian University is a domestic non-profit corporation formed and operating in Texas. This Defendant may be served through its agent of service: Victor J. Boschini Jr., 3101 Bellaire Drive North, Suite 3200, Fort Worth, Texas 76129, or at any other location where this Defendant or its agents may be legally served.

## JURISDICTION AND VENUE

17.  This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1343, as some of the claims alleged herein arise under the laws of the United States.

18.  Venue lies in this District pursuant to 28 U.S.C. § 1391, because  TCU employed Plaintiff in this District and because TCU is subject to the personal jurisdiction of Texas courts, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## EXHAUSTION OF ADMINITSTRATIVE REMEDIES

19. Plaintiff  timely  filed  charges  of  discrimination  with  the  United  States  Equal

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission ("TWC"). The EEOC Notice of Right to Sue was issued and mailed on April 4, 2024.

20.  Plaintiff has timely filed this action and has complied with all administrative prerequisites to bring this Lawsuit and his lawful recovery herein.

## FACTS

### Montigel's Recent Quantifiable, Outstanding Results

21.  Montigel achieved the following underlined quantified results that are without question proof that he was a top performer whose TCU golf team was a perennial top tier team in the Big 12 and other conferences:

### Team Achievements

a)  2023 TCU finished 2nd in Big 12 conference championship (achieved before TCU  did not renew his contract)

b)  2023 TCU qualified for the NCAA Regionals (achieved before TCU  did not renew his contract)

c)  2023 TCU Golf ranked # 27 out of 297 Division I programs. Thus, in top 9% of all Division, I golf programs nationwide (note: **TCU published** this accomplishment on the TCU's Men's Instagram account; achieved before TCU  did not renew his contract)

d)  32 years qualifying for NCAA Regionals (32 out of 33 opportunities)

e)  31 consecutive NCAA Regionals

f)  NCAA Championships 18 times

g)  Top 20 at the NCAA Championships 13 times

h)  Won eight conference titles

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

**Montigel's Coaching Awards**

i)  2022 inducted into the Golf Coach Hall of Fame (achieved <u>before</u> TCU  did not renew his contract)

j)  2023 awarded Co-Big 12 Coach of the Year (achieved <u>before</u> TCU  did not renew his contract)

k)  2023 won Eddie Merrins Award from the Ben Hogan Award Foundation, in association with the Friends of Golf, and Golf Coaches Association of America (achieved <u>before</u> TCU  did not renew his contract)

The Ben Hogan Award Foundation states that: Recipients of the Eddie Merrins Award are highly regarded for their service, dedication, and contributions to college and amateur golf while upholding the highest standards, values and ethics of the game. Harold Muckleroy, Chairman of the Ben Hogan Award, said: "Bill Montigel is a perfect selection to be this year's Eddie Merrins Award recipient." "He is revered throughout the college golf community and the city of Fort Worth for his teams' many successes, all achieved while displaying a kindness, humility, and grace that are nearly unequaled."

l)  Named Conference Coach of the Year seven times in five different leagues (Southwest Conference, Western Athletic Conference, Conference USA, Mountain West, and Big 12)

**Montigel's Players' Awards**

22.  Montigel recruited numerous talented players to TCU, including those overseas, who went on to have successful PGA careers.  Much like Donnie Nelson, Montigel has the unique ability to identify and evaluate talented foreign athletes.  Most recently, Montigel recruited Jacob Olesen, who won the British Amateur Championship. Just some of the successes of players recruited by Montigel include:

a)  16 different players achieved a total of 26 All-America honors

b)  Numerous players went on to successful PGA careers

c)  Flippo Celli won the European Amateur on June 25, 2022

d)  Jacob Olsen won British Amateur Championship on June 22, 2024

23.  ***TCU's own website*** lauded Montigel's incredible accomplishments stating:

"One of the most decorated Coaches in TCU Athletics."

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

"Since becoming the face of TCU golf, he has provided the blueprint for building *one of the Nation's top collegiate programs*."

"*TCU's golf post-season run is unparalleled* in the history of Horn Frogs Athletics."

"The streak is by far the longest all-time of the school's teams."

"Montigel's rise in collegiate golf ranks has been well-chronicled from a Coach who started out with limited exposure to his colligate sport, to becoming *one of the nation's most successful coaches*."

"It took Montigel just three seasons to turn a mediocre program into a contender at the conference, regional and national levels."

TCU Website.

**When Considering Montigel's Job Performance**
**One Must Consider all Aspects of His Job Performance**

24.   The facts demonstrate the outstanding metrics that the Montigel achieved--including being at the top tier of all Big 12 Conference golf programs. But the evaluation of a coach's job performance does not stop and end with the win loss record and conference championships. Graduating students, complying with NCAA rules, shaping young men into honorable and productive members of society, and giving back to the community are important aspects of a coach's job.

25.   Montigel produced phenomenal results for these qualitative aspects of his job. In 36 years of being TCU's golf coach, the NCAA never claimed that TCU's golf program or Montigel committed one NCAA infraction.  The TCU golf team's graduation rate and the TCU golf team's APR rating was at the top of the Big 12.  And, his students and coaches gave back to the community through volunteer work.

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

**Montigel, his Students, and Coaches were Productive Members of the Community**

26.   Montigel's TCU golf program has been dedicated to actively supporting the Fort Worth community.  Montigel, his students, and coaches have made significant charitable and civic contributions.  Among the organizations that the TCU golf team has served are: First Tee of Fort Worth, Kathy Whitworth Golf Clinic for the Boys and Girls Club, Wish Upon A Par benefitting Make-A-Wish, Susan G. Komen Foundation, Big Brothers Big Sisters of Greater Tarrant County, Tarrant Area Food Bank, Cook Children's Hospital, Alliance for Children, Habitat for Humanity, Catholic Charities, and Cornerstone Assistance Network.

**Montigel's Exceptional Results are Particularly**
**Remarkable Given Lack of TCU's Support and Subpar Facilities**

27.   Montigel's exceptional job performance is especially laudatory and remarkable given that TCU failed to give Montigel the resources, support, and funding he needed and his competitors received.  TCU did not want to invest money and resources into the golf program.

28.   TCU's total lack of commitment to the golf program is proven by the facts.  TCU wanted its golf team to compete with Texas, Oklahoma, and the other perennial top golf programs in the Big 12.  Yet, as the saying goes, TCU wanted a Cadillac for the price of a VW.

29.   All of the Big 12 golf programs, including the lower tier and lower performing golf programs had the following:

   a)  A dedicated golf practice facility; and

   b)  A home course where the students could go everyday to play.

TCU did not have a dedicated golf practice facility or a home course where the students could go everyday to play.

30.   All but two or three Big 12 golf programs:

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

    a.   Have a weight training facility dedicated to golfers only;

    b.   Have Mercedes vans to transport their golf teams to tournaments; and

    c.   Travel to tournaments on chartered private planes paid for by the school.

TCU did not have the three benefits listed above.

31.   Montigel ran his golf program for 31 years without an Assistant Coach--something all other Big 12 golf programs have had for 10+ years.  Some have multiple assistant coaches.

32.   The TCU golf program has one of the lowest budgets of any team in the Big 12.  And, Montigel was the lowest paid coach in the Big 12.

33.   As noted, Montigel achieved incredible success for TCU golf program--despite having to coach with one arm behind his back, and facing an uphill battle compared to other Big 12 golf programs that received significantly more resources and financial support from their schools.

**TCU's Golf Team Collapses After Montigel is Gone**

34.   In 2024, the first year after TCU Men's Golf was no longer led by Montigel, they finished 14th (dead last) in the Big 12 tournament, didn't make the NCAA Regionals, and ended up ranked 96th in the country.  The team never dropped below 60th in Montigel's 36 years as TCU's Coach.  TCU is satisfied with this performance because it has a younger coach.

**TCU's Athletic Director's Discrimination and Endorsement of an Animal House Atmosphere**

35.   The Athletic Director runs an "animal house" athletic department that does not care about discrimination or sexual harassment.  Examples of this include Plaintiff hearing or learning that:

    a.  A leader in the athletic department--who was married--engaged in sexual relations

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

with the wife of a highly successful TCU coach, leading to that coach leaving TCU.

b. A Senior Athletic Department official was caught in a press box in a compromising position with a female who was Senior Associate Athletic Director of Student Services.

c. At the Big 12 basketball tournament in March of 2023 in Kansas City, Missouri, a high level member of Donati's staff got falling down drunk, became belligerent with hotel staff because he lost his room key, and the hotel staff called security. This person urinated in his pants, was completely out of it, and had to be carried back to his room. These on the job drunken episodes were not uncommon for that person. Donati was present at the Kansas City tournament and took no disciplinary action against that person who reported directly to Donati.

d. At the NCAA basketball tournament in Denver Colorado in March of 2023, TCU a Frog Club fundraiser, was accused of raping a female co-worker who woke up in his hotel bed not knowing how she got there. She reported the incident to the Colorado Police. Both Donati and Levy were present at the Denver tournament when this improper sexual harassment occurred.


36. The pervasive, out of control, animal house atmosphere in the TCU athletic department is relevant because it proves Donati is not committed to creating a workplace free of discrimination and sexual harassment that complies with EEO laws. It also explains why Donati retaliated against Montigel when he had the audacity to complain about age discrimination and retaliation.

37. Despite Montigel's historic and ongoing successes, on June 16, 2022, Donati told Montigel that TCU would not renew his contract and demanded Montigel agree to a press release

---

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

*stating that Montigel was retiring*. Montigel had no intention of retiring. The Athletic Director assumed Montigel wanted to retire and would retire because of his age; those actions constitute age discrimination.

38.  Levy sent TCU's sports administrator, Stephen Schoon, an article about a retired golf coach and told Schoon to use the article as an outline for a press release announcing Montigel's retirement.

39.  Montigel made it clear to the Athletic Director that what TCU was doing was wrong, Montigel had no intention of retiring, and he would not retire. After that, TCU began retaliating against Montigel and trying to get him to quit.

40.  Angie Larkin, the Women's Golf Team's coach, is significantly younger than Montigel and her contract was up for renewal at the same time as Montigel's contract. Despite the Women's Golf team not performing anywhere near the level of the Men's team, Larkin's contract was renewed and Montigel's was not.

41.  TCU's decision to not renew Montigel's contract was because of his age.

42.  The Athletic Director committed additional age discrimination by firing a number of older, successful coaches at TCU and replacing them with much younger coaches. These include firing the men's Football Coach Gary Patterson, age 64, and replacing him with Sonny Dikes, age 54; firing the men's Track and Field Coach Daryl Anderson, age 60 and replacing him with Khadeuis Robinson, age 46.

**When Montigel Complains about Age Discrimination, TCU Retaliates**

43.  Donati's pervasive retaliation escalated when Montigel filed his EEOC age discrimination charge. For example, Levy and Donati began intentionally taking steps to isolate

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

and undermine Montigel and making his job more difficult.

44.   Donati began telling anyone who would listen that Montigel (who was still employed at the time) was "suing TCU" for age discrimination, which was not true at the time.

45.   Donati's retaliation included him telling several TCU alumni that he would never put Montigel into the TCU Hall of Fame, despite Montigel's decades of achievements.  This is another example of TCU's retaliation.

46.   Donati also ceased all conversations with Montigel and gave him the silent treatment. On numerous occasions Donati would not even say hello to Montigel when Montigel saw him and said hi or hello.  Donati had never previously shunned Montigel or given him the silent treatment.

47.   Levy also began giving Montigel the silent treatment. Levy used to communicate with Montigel on a regular basis. After Montigel opposed the discriminatory treatment, Levy would only communicate with Montigel's assistant, Adrien Mork.  Levy had never treated Montigel that way before.

48.   Previously, Donati and Levy would communicate with Montigel frequently about the Men's Golf program or social conversations in general about their lives and activities.  This drastic change in how Donati and Levy treated Montigel was obvious to Montigel's team as well as other employees at TCU.

49.   On one occasion, a TCU Men's Golf player was in the academic advisor's office going over his grades/classes when Levy called the academic adviser and said he wanted three scholarship players off the team by the end of the school year.   Levy told the academic advisor to make sure the three scholarship players would graduate so they would not be on the team in August 2023 when the fall semester began. A player present for that conversation became extremely upset upon hearing Levy was trying to control his future with TCU Golf.    Levy knew he was

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

undermining Montigel's authority and hurting the team's morale by expressing he wanted certain players gone from TCU before their eligibility was up.

50.  Word spread to the players that **Levy** wanted numerous players gone. Levy's actions had the intended impact of directly sabotaging Montigel's work and the morale of the TCU Men's Golf team.

51.  Prior to Montigel filing his discrimination complaint, Levy never interfered or tried to run off players. Levy's actions were usurping Montigel's authority, job duties, and responsibilities as Head Coach. Throughout Montigel's career he as the Head Coach--not the Assistant Athletic Director--decided which players should remain on scholarship and/or not be asked back to be part of the golf program the next year.

52.  As part of the retaliation and in an attempt to get Montigel to quit, Levy began intentionally ignoring Montigel's expense reports and not reimbursing them on a timely basis. This included an expense report for approximately $20,000 for legitimate business expenses Montigel paid for the team that was not paid for months.  This was another type of retaliation and something Montigel had not endured previously. Months later, TCU finally reimbursed Montigel the money it owed him. TCU paid the reimbursement soon after Montigel filed an EEOC charge for retaliation specifically noting that TCU had not reimbursed the business expenses he had paid.  This is another instance of retaliation.  In his entire 36-year career, TCU had never delayed reimbursements like it did after Montigel complained of discrimination and retaliation.

53.  Levy also did not timely pay tournament entry fees the TCU golf team incurred. Montigel and his assistant coach had to endure significant backlash for non-payment of those tournament entry fees. Never in Montigel's 36 years of coaching had this previously happened.

54.  Levy also began questioning the Men's Golf team's attendance at Tier 2 tournaments,

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

which Montigel used to develop the younger players, claiming it cost too much money. This criticism only began after Montigel filed his EEOC Charge.  Further, Levy's criticism made no sense given TCU Men's Golf is a Division 1 program in the Big 12 Conference and it is one of the only programs that lacks a practice facility.

55.   For the first time ever, Levy began complaining about Montigel taking the golf team out to dinner as part of team and morale building.  This was a common practice for the team and prior to Montigel filing his EEOC Charge, TCU had never before complained about Montigel taking the students out for dinner. In fact, Montigel never had this type of micromanagement from the Athletic Director's department until he opposed TCU's discriminatory treatment. It was blatant retaliation.

56.   TCU began to interfere with Montigel's ability to use money that he and the team fund-raised for the team's discretionary account. That money had always been used at Montigel's discretion for the benefit of the team.  After Montigel filed his EEOC Charge, suddenly TCU began denying Montigel use of the fund. TCU refused to allow Montigel to use the fund to fly the team to a tournament and refused to allow Montigel to use the fund for a celebration meal--which was exactly what the fund had been used for many times in the past.

57.   Other TCU employees witnessed TCU's wrongful retaliation, for example: TCU's Assistant Men's Golf Coach Adrien Mork stated under oath**:**

> I believe that TCU has retaliated against Coach Montigel. Specifically, on or about March 1, 2023, Coach Montigel received an email from Levy questioning why the coaching staff had taken the team to a celebratory dinner at Del Frisco's restaurant. Many times in the past the coaching staff had taken the team out for a nice, expensive steak dinner to celebrate a win, achievement, or simply to build team rapport and boost team morale. These types of expensive steak dinners are a common occurrence with most golf programs and college athletes.  The money spent for the dinner was from the men's golf team's discretionary account, which was appropriate. This was

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

not TCU's money, but money that Coach Montigel had raised from boosters, some of whom suggested their donations be used to take the team out to fancy restaurants for dinners."

"Levy sent an email saying he wanted to know what was the purpose of the dinner. Levy's email was out of the ordinary and highly unusual. I believe Levy sent that email in retaliation against Coach Montigel for the coach's filing of his EEOC discrimination charge."

"On March 21, 2023 Levy sent me another email wanting to know why Tier 2 players will go to a tournament.  On or about March 22, 2023 I went to Levy's office with Coach Montigel to discuss Levy's email.  Levy complained that  Tier 2 players' participation in a tournament is hard to justify from an economic standpoint. This statement was clearly retaliation.  Back in the fall of 2022 Levy had approved--in writing--Tier 2 players attending multiple tournaments."

"On or about May 1, Levy called me and asked me who the players were who were going to be on TCU's golf team's roster for next year and what was the golf program's committed schedule to tournaments and events for the coming year. In the entire time that I have worked for the men's golf program at TCU Levy had never called and asked me that question before. He always asked Coach Montigel for that information, not me. I found Levy's call to me to be out of the ordinary and quite surprising. I believe that Levy called me because Levy has been giving Coach Montigel the silent treatment and intentionally ignoring Coach Montigel ever since Coach Montigel filed his EEOC charge. I believe Levy did this to disrespect the Coach Montigel and in retaliation for him filing an EEOC charge. Coach Montigel has always been in charge of the team's schedule of tournaments and events, which Levy has known. Therefore, I believe Levy's actions in calling me were intentional retaliation to disrespect Coach Montigel."

"Michael Levy is in his 30s, I believe he is approximately 33-34 years old."

"In or around April 2023, after I knew TCU had started the process to hire a new men's golf coach, I was in Levy's office. I asked Levy about what golfing coach candidates TCU was considering to replace Coach Montigel. Levy said there had been a lot of interest in the job. I said what about hiring LSU's golf coach, he's a good coach. Levy said verbatim " TCU is not going to hire some old coach who's about to get fired."

See Affidavit attached  as Exhibit "1."

---

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

58. Despite the roadblocks and repeated retaliation Montigel faced after opposing discrimination and retaliation, TCU Men's Golf still had an awesome year.  At the end of the 2023 regular season, Montigel's last season, TCU Men's Golf team was ranked 39th nationally, finished second in the Big 12 conference championship, qualified for the NCAA Regionals, and achieved a 27 out of 297 Division I program ranking (placing it in the top 9% of golf programs nationwide).

**TCU Retaliates by Refusing to Pay Montigel the Contractual Bonuses it Owed Him**

59. Pursuant to his employment agreement Montigel earned "performance compensation" when he achieved certain performance metrics. In a further act of retaliation against Montigel and in breach of the employment agreement, TCU failed to pay Montigel the two performance compensation bonuses he earned for receiving Coach of the Year in 2023 and taking the team to the NCAA regionals.

**TCU Retaliates by Not Offering Montigel any Severance**

60. When Montigel's employment ended, TCU did not offer or pay Montigel any severance compensation. Not paying or paying different severance amounts to similarly situated employees based on age, gender, race, etc. violates Title VII.  Disparate treatment of similarly situated employees regarding terms offered in severance packages can constitute discrimination under Title VII. *Gerner* v. *County of Chesterfield,* 674 F.3d 264, 268 (4th Cir. 2012).  The Second Circuit held that a plaintiff established a prima facie case of gender discrimination under Title VII where she alleged she received less severance pay than a similarly situated male colleague. *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54-55 (2d Cir. 2001).  A federal court in Illinois denied

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

the employer/defendant's MSJ based on the court's conclusion that fact issues existed regarding disparate treatment in severance packages based on gender. *Rinaldi v. World Book, Inc.*, 2001 WL 477145 *8-9 (N.D. Ill. 2001).

## CAUSES OF ACTION

61.  Each cause of action below incorporates all of the allegations outlined above as if fully set forth therein and, to the extent necessary, are pled in the alternative. All conditions precedent have been performed or have occurred. Plaintiff exercises right to plead in the alternative.

## FIRST CAUSE OF ACTION: AGE DISCRIMINATION
## IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT

62.  Pursuant to Federal law, Plaintiff pleads a cause of action against Defendant for retaliation in violation of the ADEA. 29 U.S.C. § 621, et seq. The allegations contained in all of the paragraphs of this Complaint are hereby realleged for all purposes and incorporated herein with the same force and effect as set forth verbatim herein. Plaintiff further shows as follows:

63.   The subjection of Plaintiff to disparate treatment and adverse employment actions by Defendant in whole or substantial part because of his age was in violation of the ADEA, 29 U.S.C. §623.

64.  Defendant's violation of the ADEA was willful and Plaintiff seeks liquidated damages for each violation.

65.  As a direct and proximate result of the acts complained of above, Plaintiff has suffered damages, including without limitation loss of wages and benefits, back pay, front pay, and prejudgment interest on back pay.

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

66.   Plaintiff is entitled to the rights and remedies at law provided by the ADEA, 29.S.C. §626(b) and 216(b) including loss of wages and benefits, back pay, front pay, prejudgment interest on back pay, liquidated damages, costs and attorneys' fees.

## SECOND CAUSE OF ACTION: RETALIATION
## IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT

67.   Pursuant to Federal law, Plaintiff pleads a cause of action against Defendant for retaliation in violation of the ADEA. 29 U.S.C. § 621, et seq. The allegations contained in all of the paragraphs of this Complaint are hereby realleged for all purposes and incorporated herein with the same force and effect as set forth verbatim herein. Plaintiff further shows as follows:

68.   In violation of the ADEA, Defendant retaliated against Plaintiff because he opposed and reported age discrimination in violation of the ADEA. See 29 U.S.C. § 623(d). Specifically, after enduring a hostile environment due to his reporting of and opposition to discriminatory practices, made after TCU refused to renew his contract and told him he had to issue a press release stating he wanted to retire, Montigel engaged in protected activity and made a complaint to Defendant that TCU was engaging in age discrimination.

69.   Montigel further engaged in a protected activity when he filed his EEOC Charge of Discrimination opposing the discriminatory treatment.

70.   Shortly thereafter, TCU began retaliating against Montigel.  Among other behaviors, leaders in the Athletic Department stopped speaking to Montigel and began intentionally undermining and sabotaging his job.  For example, the Assistant Athletic Director, Michael Levy, began to interfere with scholarship and eligibility opportunities for students on the Men's Golf Team and otherwise engaged in behaviors aimed at undermining the moral of the team; he directed TCU's Sports Information Director to stop publishing Montigel and the team's successes; he

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

delayed processing Montigel's expense reports; he failed to timely pay tournament fees; and refused to let the team use its own discretionary account, which contained funds the team and Montigel fund raised, as had been the practice for decades, among other blatant retaliator actions.

71.  Plaintiff has met all procedural prerequisites of bringing this retaliation claim. Plaintiff filed a Charge of Discrimination that identified these claims. Plaintiff has obtained a Right to Sue letter from the EEOC relating to these charges. Further, Plaintiff is within all applicable statutes of limitations for bringing this action.

72.  As a proximate result of Defendant's unlawful retaliation, Plaintiff has suffered and will continue to suffer damages including, but not limited to, lost wages, lost employment benefits, loss of PTO, loss of earning capacity, inconvenience, and injury to Plaintiff's reputation and professional standing.

73.  In addition, Plaintiff is entitled to recover liquidated damages in the amount of back pay to be awarded because the facts demonstrate that Defendant engaged in unlawful discriminatory practices with malice or reckless indifference to Plaintiff's federally-protected rights. See 29 U.S.C. § 626(b). Accordingly, Plaintiff asks that liquidated damages be awarded against Defendant.

74.  Further, Plaintiff was required to retain attorneys to prosecute this action and has agreed to pay the retained attorneys a reasonable fee. Pursuant to 29 U.S.C. §§ 216(b) and 626(b), Plaintiff seeks recovery of his reasonable and necessary attorney's fees and costs.

### THIRD CAUSE OF ACTION: AGE DISCRIMINATION IN VIOLATION OF THE TEXAS COMMISSION ON HUMAN RIGHTS ACT

75.  Pursuant to Texas state law, Plaintiff pleads a cause of action against Defendant for discrimination in violation of the TCHRA. See TEX. LAB. CODE § 21.051.1, 21.101, 21.125(a).

---

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

The allegations contained in all of the paragraphs of this Complaint are hereby realleged for all purposes and incorporated herein with the same force and effect as set forth verbatim herein. Plaintiff further shows as follows:

76.  In violation of the TCHRA, Defendant subjected Plaintiff to disparate treatment and adverse employment actions by Defendant in whole or substantial part because of his age in violation of the TCHRA. *See* TEX. LAB. CODE § 21.125(a).

77.  Plaintiff has met all procedural prerequisites of bringing this TCHRA claim. Plaintiff filed a Charge of Discrimination and has obtained a Right to Sue letter from the TWC relating to these claims. Further, Plaintiff is within all applicable statutes of limitations for bringing these retaliation claims.

78.  As a proximate result of Defendant's unlawful discrimination, Plaintiff has suffered and will continue to suffer damages including, but not limited to, lost wages, lost employment benefits, lost PTO, loss of earning capacity, inconvenience, injury to Plaintiff's reputation and professional standing, and emotional pain.

79.  In addition, Plaintiff is entitled to recover compensatory and/or punitive damages from Defendant because the facts demonstrate that Defendant engaged in unlawful discriminatory practices with malice or with reckless indifference to Plaintiff's state-protected rights. See TEX. LAB. CODE § 21.2585. Accordingly, Plaintiff asks that compensatory and exemplary damages be awarded against Defendant.

80.  Further, Plaintiff was required to retain attorneys to prosecute this action and has agreed to pay the retained attorneys a reasonable fee. Pursuant to § 21.259 of the Texas Labor Code, Plaintiff seeks recovery of his reasonable and necessary attorney's fees and costs.

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

## FOURTH CAUSE OF ACTION: RETALIATION IN
## VIOLATION OF THE TEXAS COMMISSION ON HUMAN RIGHTS ACT

81.   Pursuant to Texas state law, Plaintiff pleads a cause of action against Defendant for retaliation in violation of the TCHRA. *See* TEX. LAB. CODE § 21.055. The allegations contained in all of the paragraphs of this Complaint are hereby realleged for all purposes and incorporated herein with the same force and effect as set forth verbatim herein. Plaintiff further shows as follows:

82.   In violation of the TCHRA, Defendant retaliated against Plaintiff as outlined above because he engaged in protected activity and reported and filed a complaint regarding age discrimination in violation of the TCHRA. See TEX. LAB. CODE § 21.055(3).

83.   Plaintiff has met all procedural prerequisites of bringing this TCHRA claim. Plaintiff filed a Charge of Discrimination and has obtained a Right to Sue letter from the TWC relating to these claims. Further, Plaintiff is within all applicable statutes of limitations for bringing these retaliation claims.

84.   As a proximate result of Defendant's unlawful retaliation, Plaintiff has suffered and will continue to suffer damages including, but not limited to, lost wages, lost employment benefits, lost PTO, loss of earning capacity, inconvenience, injury to Plaintiff's reputation and professional standing, and emotional pain.

85.   In addition, Plaintiff is entitled to recover compensatory and/or punitive damages from Defendant because the facts demonstrate that Defendant engaged in unlawful discriminatory practices with malice or with reckless indifference to Plaintiff's state-protected rights. See TEX. LAB. CODE § 21.2585. Accordingly, Plaintiff asks that compensatory and exemplary damages be awarded against Defendant.

86.   Further, Plaintiff was required to retain attorneys to prosecute this action and has

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

agreed to pay the retained attorneys a reasonable fee. Pursuant to § 21.259 of the Texas Labor Code, Plaintiff seeks recovery of his reasonable and necessary attorney's fees and costs.

## FIFTH CAUSE OF ACTION: BREACH OF CONTRACT

87.   Pursuant to Texas state law, a cause of action is pled against Defendant for breach of contract. The allegations contained in all of the paragraphs of this Pleading are hereby realleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

88.   Plaintiff entered into a valid written contract with Defendant for Employment of Plaintiff as TCU's Men's Golf Coach, the Agreement.

89.   Plaintiff gave Defendant valuable consideration and fully performed all duties required of Plaintiff under the Agreement and performed all conditions precedent under the Agreement. Defendant breached said Agreement by refusing to follow the express and/or implied terms of said Agreement. In particular, Defendant breached this Agreement by failing to perform Defendant's duties under the contract and pay Plaintiff his Performance Compensation. Further, Defendant failed to perform the contract in a good and workmanlike manner.

90.   As a direct and proximate consequence of Defedant's breach, Plaintiff suffered damages in an amount in excess of the minimum jurisdictional requirements of this Court.

91.   As noted previously, Plaintiff was employed by Defendant on various dates. Plaintiff alleges that Defendant breached the Agreement by refusing to follow the implied and/or express terms of said contract. In particular, Defendant allowed or condoned Defendant's employees, acting within the course and scope of their employment, and pursuant to the practices, customs and policies of Defendant, discriminate against Plaintiff on account of his age. When Plaintiff

---

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

complained about the discrimination, Defendant did nothing meaningful to correct the problem and allowed it to continue. Moreover, Defendant and/or Defendant's employees took retaliatory actions against Plaintiff for complaining about the discriminatory treatment. Further, Defendant allowed Plaintiff to be discriminated against and permitted a hostile environment to exist.

92.   Because of the above-described breach of contract, Plaintiff had to retain attorneys to prosecute this Action and agreed to pay the retained attorneys a reasonable fee. Pursuant to Texas Civil Practice & Remedies Code §§ 38.000-38.006 et seq., Plaintiff gave Defendant proper notice of Plaintiff's claims and proper notice of this claim for attorneys' fees.

## LIQUIDATED DAMAGES

93.   As a consequence of the foregoing facts showing unlawful discriminatory practices with malice or reckless indifference to Plaintiff's federally-protected rights, Plaintiff is entitled to liquidated damages as outlined in the ADEA. See 29 U.S.C. § 626(b).

## COMPENSATORY DAMAGES

94.   As a consequence of the foregoing clear and convincing facts and the willful and malicious nature of the wrongs committed against the Plaintiff, Plaintiff is entitled to compensatory damages. *See* TEX. LAB. CODE § 21.2585.

## REASONABLE ATTORNEYS' AND EXPERT FEES

95.   Per the ADEA (29 U.S.C. §§ 216(b) and 626(b)) and TEX. LAB. CODE 21.259, as amended, Plaintiff seeks to recover his reasonable and necessary attorneys' fees and reasonable expert fees incurred in prosecuting each of Plaintiff's ADEA and TCHRA claims.

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

## **RESERVATION OF RIGHTS**

96.  Plaintiff specifically reserves the right to bring additional causes of action and seek additional relief against Defendant and to amend this Complaint as necessary as uncovered in Plaintiff's investigation and/or as further discovery is conducted in this matter. Plaintiff's investigation continues.

## **JURY DEMAND**

97.  Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury on all issues.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests this Court to enter judgment in its favor and grant the following relief:

A.      Plaintiff's back pay and other actual damages as determined at trial;

B.      Reinstatement or front pay if reinstatement is not feasible;

C.      Compensatory damages;

D.      Liquidated damages;

E.      Reasonable attorney's fees and expenses;

F.      Costs and disbursements; and

G.      Such other and further relief as deemed just and proper by this Court.

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

Respectfully submitted,

**ROGGE DUNN**
State Bar No. 06249500
Email: dunn@righttowork.com

**KATIE BLAKEY**
State Bar No. 24111394
Email: Blakey@roggedunngroup.com

**ROGGE DUNN GROUP, PC**
500 N. Akard Street
Suite 1900
Dallas, Texas 75201
Telephone: (214) 888-5000
Facsimile: (214) 220-3833

**ATTORNEYS FOR PLAINTIFF
BILL MONTIGEL**

---

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

## <u>AFFIDAVIT OF ADRIEN MORK</u>

STATE OF TEXAS       )
                                 )
COUNTY OF DALLAS    )

On this day came before me Adrien Mork, who first being duly sworn under oath deposes and states as follows:

1. "My name is Adrien Mork.  I am over twenty-one (21) years of age, I am of sound mind and body, and I have never been convicted of a felony or offense involving moral turpitude.  I am fully competent to make this Affidavit."

2. "Before I discussed any substantive matters with Rogge Dunn or signed any statements, Rogge Dunn asked me what job I have with TCU ( the "School").  I informed him that I had not been/I am currently not an officer, managing employee or person with managerial responsibility with the School."

3. "Before discussing any substantive matters, Rogge Dunn explained to me that he wanted to interview me and take a statement as part of his investigation of the Bill Montigel's (the "Claimant") claim against the School.  Rogge Dunn informed me that his investigation and this interview might reveal facts that would indicate that the Claimant could sue and might sue the School."

4. "I have been asked to tell what I know about age discrimination, age animus in the TCU athletic department and whether or not I've seen TCU discriminate against Bill Montigel or retaliate against him.  I am providing a summary of some of the information that I know of my own free will.

5. "I have personal knowledge of the facts stated herein because I heard the comments referenced

EXHIBIT
"1"

herein and I work in TCU's athletic department. I also have personal knowledge of the facts stated herein because I am employed by TCU as the assistant men's golf coach. In my job position, as an assistant coach I have experience with the issues discussed in this Affidavit. Further, I was a participant in the conversations referenced herein and/or saw any documents referenced herein."

6. "I have personal knowledge of and experience and familiarity with the matters that are the subject of this Affidavit. I have personal knowledge of the facts stated in this Affidavit."

7. "I am making this statement of my own free will, without coercion or promise of any benefit, recompense, or other consideration. I do not have any dispute with the School and am simply telling the truth about what I know."

8. "Michael Levy ("Levy") who is TCU's Men's Golf Sports Administrator had frequent contact with me ever since Levy was first hired at TCU. Typically, I would receive communications from Levy (emails, texts, or calls) approximately once a week. After Coach Montigel filed a charge with the EEOC complaining of age discrimination, the frequent communications Levy had with me dramatically decreased."

9. "Since Coach Montigel filed his EEOC charge on or around September 22, 2023, I very seldom receive any communications from Levy. That is highly unusual, out of the ordinary, and it appears to me that Levy stopping the communications in retaliation against Coach Montigel for his filing of the EEOC charge. In addition, I believe that TCU has retaliated against Coach Montigel. Specifically, on or about March 1, 2023, Coach Montigel received an email from Levy questioning why the coaching staff had taken the team to a celebratory dinner at Del Frisco's restaurant. Many times in the past the coaching staff had taken the team out for a nice, expensive steak dinner to celebrate a win, achievement, or simply to build team rapport and boost team morale. These types of expensive steak dinners are a common occurrence with most golf programs and college athletes. The money spent for the dinner was from the men's golf team's

**2**

discretionary account, which was appropriate. This was not TCU's money, but money that Coach Montigel had raised from boosters, some of whom suggested their donations be used to take the team out to fancy restaurants for dinners."

10. "Levy sent an email saying he wanted to know what was the purpose of the dinner. Levy's email was out of the ordinary and highly unusual. I believe Levy sent that email in retaliation against Coach Montigel for the coach's filing of his EEOC discrimination charge."

11. "On March 21, 2023 Levy sent me another email wanting to know why Tier 2 players will go to a tournament. On or about March 22, 2023 I went to Levy's office with Coach Montigel to discuss Levy's email. Levy complained that Tier 2 players' participation in a tournament is hard to justify from an economic standpoint. This statement was clearly retaliation. Back in the fall of 2022 Levy had approved--in writing--Tier 2 players attending multiple tournaments."

12. "In the past boosters--had used at their total expense--their private planes to fly the team to tournaments. Coach Montigel wanted to use the discretionary funds that he had raised from boosters to fly the team on a private jet to the regional NCAA Tournament. TCU's administration objected to using the discretionary funds to fly the team private to the NCAA regionals."

13. "On or about May 1, Levy called me and asked me who the players were who were going to be on TCU's golf team's roster for next year and what was the golf program's committed schedule to tournaments and events for the coming year. In the entire time that I have worked for the men's golf program at TCU Levy had never called and asked me that question before. He always asked Coach Montigel for that information, not me. I found Levy's call to me to be out of the ordinary and quite surprising. I believe that Levy called me because Levy has been giving Coach Montigel the silent treatment and intentionally ignoring Coach Montigel ever since Coach Montigel filed his EEOC charge. I believe Levy did this to disrespect the Coach Montigel and in

retaliation for him filing an EEOC charge. Coach Montigel has always been in charge of the team's schedule of tournaments and events, which Levy has known. Therefore, I believe Levy's actions in calling me were intentional retaliation to disrespect Coach Montigel."

14. "Michael Levy is in his 30s, I believe he is approximately 33-34 years old."

15. "In or around April 2023, after I knew TCU had started the process to hire a new men's golf coach, I was in Levy's office. I asked Levy about what golfing coach candidates TCU was considering to replace Coach Montigel. Levy said there had been a lot of interest in the job. I said what about hiring LSU's golf coach, he's a good coach. Levy said verbatim " TCU is not going to hire some old coach who's about to get fired."

16. "I declare under oath and under penalty of perjury that the foregoing statements in this Affidavit are within my personal knowledge and are true and correct."

FURTHER AFFIANT SAYETH NOT.

_____
Adrien Mork, Affiant

SUBSCRIBED AND SWORN TO BEFORE ME, to certify which witness my hand and seal of office, on the __7ᵗʰ__ day of ___May___, 20_23_.



(SEAL)   TRACY EDWARDS
         Notary Public
         STATE OF TEXAS
         ID# 1061510-4
         My Comm. Exp. March 1, 2025

_____
Notary Public in and for
the State of Texas

My Commission Expires: _3-1-2025___.